Civil Action Number: 08 Civ. 6893 (VM)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

WILLIAM KREGLER,

Plaintiff,

-against-

THE CITY OF NEW YORK, LOUIS GARCIA, BRIAN
GROGEN, ROSE GILL HEARN, KEITH SCHWAM, AND
DARREN KEENAGHAN, sued in their individual and official
capacities,

Defendants.

## MEMORANDUM OF LAW IN SUPPORT
## OF DEFENDANTS' MOTION TO DISMISS
## THE COMPLAINT

**MICHAEL A. CARDOZO**
Corporation Counsel of the City of New York
Attorney for Defendants
100 Church Street, Room 2-138
New York, NY 10007-2601
Tel: (212) 788-0866

PAUL MARKS
CHRISTOPHER A. SEACORD,
 Of Counsel

Matter No. 2006-005982

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................ 1

STATEMENT OF FACTS ..................................................................................................... 4

ARGUMENT ............................................................................................................................. 9

      POINT I ............................................................................................................................ 9

            PLAINTIFF HAS FAILED TO STATE A CLAIM
            OF FIRST AMENDMENT RETALIATION............................................. 9

            A.  Failure to State a <u>Prima</u> <u>Facie</u> Case ..................................................... 9

            B.  Intracorporate Conspiracy Doctrine ................................................. 18

CONCLUSION....................................................................................................................... 19

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------ x

WILLIAM KREGLER,

                                        Plaintiff,

                                                        08 Civ. 6893 (VM)

                -against-

THE CITY OF NEW YORK, LOUIS GARCIA, BRIAN
GROGAN, ROSE GILL HEARN, KEITH SCHWAM, and
DARREN KEENAGHAN, sued in their individual and
official capacities,

                                        Defendants.

------------------------------------------------------------------------ x

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS THE AMENDED COMPLAINT

### PRELIMINARY STATEMENT

        Defendants City of New York, Louis Garcia, Brian Grogan, Rose Gill Hearn,

Keith Schwam and Darren Keenaghan, by their attorney, Michael A. Cardozo, Corporation

Counsel of the City of New York, respectfully submit this memorandum of law in support of

their motion, pursuant to Federal Civil Procedure Rule 12(b)(6), to dismiss the amended

complaint for failure to state a claim upon which relief can be granted.

        Plaintiff, a former Fire Marshal with the Fire Department of the City of New York

("FDNY"), commenced this action on August 1, 2008, pursuant to 42 U.S.C. §§ 1983 and

1985(3),  alleging that defendants violated his rights under the First and Fourteenth Amendments

to the United States Constitution.  Specifically, plaintiff alleged that the defendants conspired to

deprive him of an appointment to the position of New York City Marshal in retaliation for his

public endorsement of Robert Morganthau's candidacy for re-election as New York County

District Attorney.  In his complaint, plaintiff indicated that he was seeking the following relief: (1) a declaration that defendants have violated his rights under the First Amendment to the United States Constitution; (2) appointment to the position of City Marshal; (3) compensatory and punitive damages; and (4) attorneys' fees.

On October 7, 2008, defendants moved to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(6), arguing that plaintiff had failed to state a claim upon which relief could be granted.  On October 30, 2008, a conference was held before the Honorable Victor Marrero for the purpose of addressing the arguments raised in defendants' motion.  At the conference, Judge Marrero provided plaintiff's counsel approximately one week to decide whether he wished to withdraw some or all of his claims, submit a response to defendants' motion, or file an amended complaint that cured the defects cited in defendants' motion to dismiss.  On November 7, 2008, plaintiff's counsel sent a letter to the Court indicating that he wished to withdraw plaintiff's claims under 42 U.S.C. § 1985(3), and submit an amended complaint with additional factual allegations that purportedly would cure the defects of the original complaint.  The Court granted plaintiff's request to file an amended complaint and, on November 14, 2008, plaintiff served and filed his amended complaint.

The amended complaint fails to cure the defects cited by defendants in their motion to dismiss the initial complaint, and, therefore, must be dismissed for failure to state a claim upon which relief may be granted.  First, plaintiff has failed to state a prima facie case under the First Amendment because he has failed to plead any facts that would allow a reasonable person to conclude that a causal connection existed between his alleged protected speech and the challenged adverse action.  Additionally, to the extent that plaintiff alleges that defendants conspired to violated his constitutional rights, his claim must be dismissed under the

intracorporate conspiracy doctrine, as all of the individual defendants were employees of the same municipal entity—the City of New York.

## <u>STATEMENT OF FACTS</u>[1]

According to the amended complaint, plaintiff was employed by the FDNY from 1984 through 2004, the last ten years of which he held the position of Fire Marshal.  <u>See</u> Amended Complaint ¶¶ 10-12.  On March 17, 2004, after completing twenty years of service, plaintiff voluntarily retired from the FDNY.  <u>Id.</u> ¶ 13.

On April 22, 2004, approximately one month after his retirement from the FDNY, plaintiff applied for the position of City Marshal by submitting an application to the New York City Mayor's Committee on City Marshals.  <u>Id.</u> ¶ 14.  Appointment of City Marshals is governed by Section 1601 of the New York City Civil Court Act (hereinafter "the CCA"), which vests the Mayor with authority to appoint up to 83 individuals to the position of City Marshal.  N.Y.C. Civil Ct. Act § 1601(1).  Despite being appointed by the Mayor, City Marshals are not employees of the City of New York and do not receive City salaries.  Rather, they are independent officers who earn their income by collecting fees for services rendered in connection with the enforcement of court orders.  Nonetheless, as public officers, City Marshals are subject to oversight by, and discipline from, the New York City Department of Investigation ("DOI") and the Appellate Division of the New York State Supreme Court.[2]

---

[1] For the purposes of this motion only, the material facts as alleged in the amended verified complaint are deemed to be true.

[2] <u>See</u> <u>Mayor's Committee on City Marshals:  About City Marshals</u> (2008), <u>at</u> http://www.nyc.gov/html/mccm/html/about_marshals/about_marshals.shtml.

Pursuant to Section 1601 and Executive Order No. 44 of the Mayor of the City of New York (hereinafter "E.O. 44"),[3] an independent committee known as the Mayor's Committee on City Marshals (hereinafter "the Mayor's Committee" or "the Committee") has been established for the purpose of recruiting and recommending candidates for appointment to the position of City Marshal.  See N.Y.C. Civil Ct. Act § 1601(2); E.O. 44.  The Committee consists of fifteen members appointed by the Mayor, six of which the Mayor appoints directly, three after selection by the presiding justice of the Appellate Division, First Judicial Department, another three after selection by the presiding justice of the Appellate Division, Second Judicial Department, and finally three more after selection by the deans of three law schools located in New York City.[4]  N.Y.C. Civil Ct. Act § 1601(2); E.O. 44 § 6.  The functions and duties of the Mayor's Committee are as follows:

> (a)    Establish and publish qualifying criteria for appointment to the office of City marshal;
>
> (b)    Recruit and receive from any source the names and candidates for the office of City marshal;
>
> (c)    Consider all relevant information to determine which of the fully qualified candidates are best qualified to serve as City marshals; and
>
> (d)    Recommend up to three qualified persons for appointment to the office of City marshal upon the occurrence of a vacancy in such office.

E.O. 44 § 2; see also N.Y.C. Civil Ct. Act § 1601(3).

---

[3] A copy of E.O. 44 is publicly available on the website for the Mayor's Committee on City Marshals and can be accessed via the following URL: http://www.nyc.gov/html/mccm/downloads/pdf/executive_order_44.pdf.

[4] The task of selecting one of the committee members rotates annually among the deans of eligible law schools in the City.

Each candidate for the position of City Marshal must consent to, and cooperate in, a DOI investigation into his/her background and financial resources.  <u>See</u> N.Y.C. Civil Ct. Act § 1601(3); E.O. 44 § 3.  The Mayor's Committee cannot recommend an individual for appointment to the position of City Marshal until DOI has completed its investigation and reported its findings to the Committee.  <u>See</u> N.Y.C. Civil Ct. Act § 1601(4); E.O. 44 § 4.  In turn, the Mayor is precluded from appointing an individual to the position of City Marshal absent a recommendation from the Mayor's Committee.  <u>See</u> N.Y.C. Civil Ct. Act § 1601(4); E.O. 44 § 5. In addition to the background investigation, an individual may not be appointed to the position of City Marshal until he/she has satisfactorily completed DOI's training program for City Marshals. <u>See</u> N.Y.C. Civil Ct. Act § 1601(4); E.O. 44 § 5.

In January 2005, approximately nine months after plaintiff submitted his application for the City Marshal position, he was interviewed by representatives of the Mayor's Committee.[5]  <u>See</u> Amended Complaint ¶ 17.  Subsequently, on or about March 24, 2005, defendant Keith Schwam, Assistant Commissioner of DOI, notified plaintiff that the Mayor's Committee had requested that DOI initiate the requisite investigation into plaintiff's background and financial resources.  <u>Id.</u> ¶ 18.  On April 5, 2005, plaintiff met with defendant Darren Keenaghan, a DOI investigator, in order to discuss his application and provide the necessary authorizations for release of his tax, credit, motor vehicle, employment and financial records.  <u>Id.</u> ¶ 19.  At this meeting, plaintiff made "minor changes" to his City Marshal application and re-signed the application in defendant Keenaghan's presence.  <u>Id.</u>

---

[5] The complaint is unclear as to whether plaintiff was interviewed by members of the Mayor's Committee, or merely by individuals acting on its behalf.

On May 25, 2005, plaintiff, allegedly in his role as President of the Fire Marshal's Benevolent Association ("FMBA"), publicly endorsed the candidacy of Robert Morgenthau in his bid for re-election to the position of New York County District Attorney. See id. ¶ 20. According to plaintiff, "all the other law enforcement unions or associations in the City of New York," had endorsed Leslie Crocker Snyder, Morgenthau's challenger in the Democratic Primary. See id. ¶ 21. In June 2005, following plaintiff's alleged endorsement of Morgenthau, *The Chief*, a local newspaper, published an article discussing plaintiff's and the FMBA's endorsement of Morgenthau. Id. ¶ 26. According to plaintiff, defendant Brian Grogan, Supervising Fire Marshal of the City-Wide Fire Marshal Base, posted a copy of the article in a public area of the offices of the Bureau of Fire Investigation, and wrote comments in the margins of the article that "cast[ plaintiff] and his endorsement in a negative light."[6] See id. ¶ 27. Plaintiff further alleges that defendant Grogan "berated" him regarding the endorsement, stating, "Who the f _ _ _ do you think you are. Louie [Garcia] makes the endorsements." See id. ¶ 28.

On or about July 7, 2005, plaintiff was interviewed at City Hall by members of the Mayor's Office regarding his application for appointment to the position of City Marshal. Id. ¶ 29. The following day, on July 8, 2005, defendant Schwam informed plaintiff that the next step in the application process was for DOI to complete a full background investigation, and plaintiff subsequently met with defendant Keenaghan a second time and submitted another application for the City Marshal position. Id. ¶¶ 30-31. Subsequently, in September 2005,

---

[6] Plaintiff's allegations to the contrary notwithstanding, it is far from clear that the comments allegedly written by defendant had the purpose or effect of "casting [him] and his endorsement in a negative light." Rather, they appear to be notes from a subsequent conversation between plaintiff and defendant Grogan in which plaintiff tried to clarify the reasons that certain inaccuracies appeared in the article. Specifically, why the article misstates FMBA's total membership. See Complaint, Exhibit 1.

defendant Schwam invited plaintiff, along with four other candidates, to begin taking training classes, which he satisfactorily completed.  Id. ¶¶ 32-35.  In November 2005, plaintiff satisfied another step in the appointment process by demonstrating his ability to obtain the requisite bond.  See id. ¶ 36.  Also in November 2005, Robert Morgenthau was re-elected to the position of New York County District Attorney.  Id. ¶ 37.

On or about March 10, 2006, defendant Schwam sent plaintiff a letter informing him that he would not be appointed to the position of City Marshal.  Id. ¶ 44.  According to plaintiff, the letter did not offer any explanation as to why he was not being offered an appointment.  See id.

On August 1, 2008, plaintiff filed the instant complaint alleging that the defendants conspired to deprive him of an appointment to the position of City Marshal in retaliation for his public endorsement of Robert Morgenthau's candidacy for district attorney.  See id. ¶¶ 45-56, 53-57.  That is, plaintiff claims, "[u]pon information and belief," that "[d]efendants [Louis] Garcia, Grogan and/or others employed by the City of New York requested that [defendants Rose] Gill Hearn, Schwam, Keenaghan and/or others at the Department of Investigation misuse their authority under law and reject or cause to be rejected [plaintiff's] City Marshal application in retaliation for [plaintiff's] endorsement of Morgenthau."  Id. ¶ 45.  According to plaintiff, defendants alleged that he was not offered an appointment as City Marshal because he failed to disclose all of the details regarding a command discipline that he received in 1999 while employed by the FDNY.  See id. ¶ 48.  Plaintiff alleges that this proffered rationale was merely pretextual, and that the actual reason he did not receive an appointment was because he publicly endorsed Morgenthau's candidacy.  See id. ¶ 50.

**ARGUMENT**

**POINT I**

**PLAINTIFF HAS FAILED TO STATE A CLAIM OF FIRST AMENDMENT RETALIATION.**

**A.    Failure to State a Prima Facie Case**

      In order to state a claim of First Amendment retaliation under 42 U.S.C. § 1983, plaintiff must allege the following elements:  (1) he spoke as a citizen on a matter of public concern; (2) he suffered an adverse employment action; and (3) a causal connection exists between the protected speech and adverse action such that the protected activity was a substantial or motivating factor in the adverse employment action.  See Washington v. County of Rockland, 373 F.3d 310, 320 (2d Cir. 2004); Johnson v. Ganim, 342 F. 3d 105, 112 (2d Cir 2003); Sheppard v. Beerman, 317 F. 3d 351, 355 (2d Cir. 2003), cert. denied, 540 U.S. 822 (2003). With regard to the third element, a plaintiff can demonstrate a causal connection between the alleged protected activity and the challenged adverse action in one of two ways:  "(1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct; or (2) directly, through evidence of retaliatory animus directed against the plaintiff by the defendant."  Gordon v. New York City Bd. of Educ., 232 F.3d 111, 117 (2d Cir. 2000); see also Morris v. Lindau, 196 F.3d 102, 110 (2d Cir. 1999).  To survive a motion to dismiss, plaintiff must allege facts that "could reasonably support an inference" that plaintiff's speech was a substantial or motivating factor in the adverse action.  See Posr v. Court Officer Shield # 207, 180 F.3d 409, 418 (2d Cir. 1999).

      As an initial matter, it is important to distinguish between the two groups of individual defendants named in the instant action.  The first group consists of Louis Garcia,

former Chief Fire Marshal of the Bureau of Fire Investigation, and Brian Grogan, an FDNY Supervising Fire Marshal (hereinafter "the FDNY defendants"), while the second group consists of DOI Commissioner Rose Gill Hearn, Assistant Commissioner Keith Schwam, and former investigator Darren Keenaghan (hereinafter "the DOI defendants").  Additionally, the alleged protected activity was plaintiff's public endorsement of Robert Morgenthau's candidacy,[7] while the adverse employment action was DOI's alleged decision to recommend that plaintiff not be appointed to the position of City Marshal.[8]

In this case, even assuming, for purposes of this motion only, that plaintiff engaged in a protected activity and suffered an adverse employment action, he has failed to state a claim of retaliation because he has not alleged sufficient facts upon which a reasonable person could infer a causal connection between "his" endorsement of Morgenthau's candidacy and the decision not to appoint him to the position of City Marshal.  The only allegations that tend to show that any of the defendants even had knowledge of plaintiff's endorsement, let alone that they harbored any resentment toward him because of it, are that defendant Grogan posted a copy of the article in the offices of the Bureau of Fire Investigation and wrote comments on it, and that defendant Grogan "berated" plaintiff for making the endorsement when the role of making such

_____

[7] Notably, plaintiff insists on referring to the endorsement of Morgenthau's candidacy as "his endorsement," see, e.g., Complaint ¶ 24, despite the fact that plaintiff's own exhibit clearly demonstrates that the endorsement actually was that of the entire FMBA, and that plaintiff's role was merely that of a representative communicating the union's endorsement to the public, see id., Exhibit 1.

[8] From the face of the complaint, it is unclear whether the DOI defendants made the decision that plaintiff would not be appointed to the position of City Marshal, or merely whether they simply were communicating the decision of the Mayor's Committee.  Nonetheless, for purposes of this motion only, it will be assumed that the DOI defendants, either by submitting a negative report to the Committee or affirmatively refusing to recommend plaintiff, exerted sufficient influence such as to prevent plaintiff's appointment to the position of City Marshal.

endorsements belonged to defendant Garcia.  See Complaint ¶¶ 23-24.  But these actions, both of which are attributed only to defendant Grogan, do not demonstrate that he harbored any animosity toward plaintiff for engaging in a protected activity, but rather, merely that he was angered by the fact that plaintiff had spoken on behalf of a group of individuals for whom he had no right to speak.[9]

Nonetheless, even assuming that plaintiff has alleged sufficient facts to demonstrate that defendant Grogan harbored a retaliatory animus toward plaintiff, he still falls woefully short of stating a claim of retaliation against any of the defendants.  In order to establish liability against an individual defendant under § 1983, a plaintiff must allege that the defendant was personally involved in the purported deprivation of federal rights.  See Back v. Hastings on Hudson, 365 F.3d 107, 122 (2d Cir. 2004).  "A finding of personal involvement of the individual defendants in an alleged constitutional deprivation is a prerequisite to an award of damages under Section 1983."  Feingold v. New York, 366 F.3d 138, 159 (2d Cir. 2004).

Here, the only allegations of personal involvement in the decision not to recommend plaintiff for appointment to the position of City Marshal are against Schwam, who informed plaintiff that he would not be offered an appointment, and, arguably, Keenaghan, who performed plaintiff's background investigation.  See Complaint ¶¶ 19, 27, 35.  Other than the entirely conclusory assertion regarding the existence of an alleged conspiracy, the complaint

---

[9] Indeed, the face of plaintiff's complaint demonstrates that any dissatisfaction toward plaintiff's actions on the part of defendant Grogan likely was justified.  According to plaintiff, the FMBA is "an organized association of employees of the Fire Marshal's division of the Fire Department." See Complaint ¶ 20.  However, at the time of his alleged endorsement, plaintiff was no longer an employee of the FDNY, having retired from service over a year earlier.  See id. ¶ 13.  Therefore, because plaintiff apparently no longer could have been an active member of FMBA, he could not have had any authority to speak on its behalf.

contains no factual allegations that either Grogan or Garcia participated in plaintiff's background investigation or played any role in the decision not to offer him an appointment. Indeed, as members of the FDNY, not the DOI or the Mayor's Committee, defendants Grogan and Garcia did not have the authority to participate in the investigation or decision-making process regarding plaintiff's application for appointment to the City Marshal position.

As to Schwam and Keenaghan, the only individuals who arguably participated in the denial of plaintiff's application, plaintiff fails even to allege that they were at all aware of plaintiff's endorsement of Morganthau, let alone that they harbored any retaliatory animus toward him because of that endorsement. In other words, plaintiff has failed to allege that the individual who arguably bore a retaliatory animus towards him (Grogan) was personally involved in the denial of his application for City Marshal, or that the individuals that arguably were responsible for denying his application for City Marshal (Schwam and Keenaghan) bore any retaliatory animus towards him because of his political beliefs. It is exceedingly difficult to imagine how any reasonable individual could infer a causal connection under such circumstances.

Plaintiff attempts to fill this obvious hole in his theory of liability by littering his complaint with wholly conclusory allegations regarding the existence of a conspiracy between the defendants, the purpose of which was to block plaintiff's application for the City Marshal position in retaliation for his support of Morganthau's candidacy.[10]   See e.g., Amended Complaint ¶¶ 45-46. As courts in this Circuit consistently have held, where a plaintiff alleges

---

[10] Although plaintiff never actually uses the word "conspiracy," it is clear that he intends to assert such a claim. See, e.g., ¶¶ 40-41, 45. Without such an assertion, he could not possibly hope to establish the causation element of his retaliation claim.

that the defendants conspired to deprive him of a constitutional right, a heightened pleading standard applies.  See, e.g., Pangburn v. Culbertson, 200 F.3d 65, 72 (2d Cir. 1999); Sommer v. Dixon, 709 F.2d 173, 175 (2d Cir.), cert denied, 464 U.S. 857 (1983); Angola v. Civiletti, 666 F.2d 1, 9 (2d Cir. 1981); Brewster v. Nassau County, 349 F. Supp. 2d 540, 547 (E.D.N.Y. 2004). In such cases, a plaintiff must allege actual facts tending to show:  "(1) an agreement between two or more state actors or between a state actor and a private entity (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal, and causing some harm."  See Brewster, 349 F. Supp. 2d at 547.  "Specifically, plaintiff must provide some factual basis supporting a meeting of the minds, such as that defendants entered into an agreement, express or tacit, to achieve the unlawful end; plaintiff must also provide some details of time and place and the alleged effects of the conspiracy."  Romer v. Morgenthau, 119 F. Supp. 2d 346, 363 (S.D.N.Y. Sept. 26, 2000).  "A complaint containing only conclusory, vague, or general allegations of conspiracy to deprive a person of constitutional rights cannot withstand a motion to dismiss."  Sommer, 709 F.2d at 175; see also Pangburn, 200 F.3d at 72.

Courts in this circuit frequently have found that complaints suffering from the same deficiencies as the instant complaint failed to adequately assert an actionable conspiracy claim.  For example, in Romer v. Morganthau, the Court found that plaintiff had failed to state a conspiracy claim against defendants where his complaint asserted that defendants "met and communicated from January 1991 through August 1999 by phone, letters, memoranda, fax, and e-mail to conspire to violate [plaintiff's] civil and constitutional rights," but failed to offer any specific factual assertions from which an actual "meeting of the minds" could be inferred.  See Romer, 119 F. Supp. 2d at 352, 364.  Similarly, in Hickey-McAllister v. British Airways, the Court found plaintiff's allegation that the defendants testified falsely at her hearing "in

13

furtherance of a conspiracy between them" insufficient to satisfy the heightened pleading requirement.  978 F. Supp. 113, 139 (E.D.N.Y. 1997).  That is, because plaintiff failed to allege any actual facts from which a meeting of the minds could be inferred, the Court concluded that plaintiff's allegations were insufficient to survive a motion to dismiss the complaint.  See id.  Finally, in Pollack v. Nash, the Court dismissed a conspiracy claim where the plaintiffs alleged that the defendants conspired to deprive them of their constitutional rights, but failed to offer "a single allegation as to when, where, or how this conspiracy was formed."  58 F. Supp. 2d 294, 302 (S.D.N.Y. 1999).

Like the plaintiffs in Romer, Hickey-McAllister, and Pollack, plaintiff herein offers only conclusory allegations, based "[u]pon information and belief," regarding the relationships between the individuals identified in his complaint and their respective political leanings, but fails to offer any actual facts from which a reasonable person could infer that a "meeting of the minds" took place.  Notably, plaintiff alleges the following:  (1) "Garcia has misused his position as Chief Fire Marshal to further his own political objectives," but fails to offer a single example of Garcia's alleged abuse of power, see id. ¶ 23; (2) "Garcia and Grogan learned that Kregler was on the verge of being appointed as a City Marshal, and they agreed to take steps to prevent Kregler's appointment in retaliation for Kregler's endorsement of Morgenthau," but fails to offer any factual allegations regarding how Garcia and Grogan learned of Kregler's application or when this alleged agreement took place, see id. ¶ 38; (3) "Gill Hearn and Garcia are personally and socially acquainted," but fails to offer any specifics regarding how they are "acquainted" or to what extent, see id. ¶ 39; (4) "Garcia and Gill Hearn learned that Kregler was on the verge of being appointed as a City Marshal and agreed to take steps to interfere with and prevent Kregler's appointment," but fails to identify how or when Garcia and

Gill Hearn learned of his application, how or when they reached this agreement, or what "steps" they agreed to take to interfere with plaintiff's appointment, see id. ¶ 40; and (5) "Garcia and Gill Hearn agreed to cause Kregler's application for appointment as a City Marshal to be rejected by DOI in retaliation for Kregler's support of Morgenthau," but again fails to offer any facts regarding how, when or where this agreement was reached, or what means Garcia and Gill Hearn intended to use to "cause Kregler's application . . . to be rejected," see id. ¶ 41.

Plaintiff's theory of liability is so wrought with holes that it is difficult to know where to begin. Essentially, plaintiff's proposed causal connection between his alleged protected activity and the challenged adverse action can be summarized as follows. Grogan found out about plaintiff's endorsement of Morganthau and became angry. Grogan then told Garcia, who told Gill Hearn (with whom Garcia was "acquainted"), who subsequently used her authority over Schwam and Keenaghan to block plaintiff's application for the City Marshal position. Plaintiff does not identify when, where or how Grogan communicated with Garcia; when, where or how Garcia communicated with Gill Hearn; or when, where or how Gill Hearn communicated with Schwam and/or Keenaghan. Indeed, the complaint does not even allege that Schwam or Keenaghan ever joined in an agreement to violate plaintiff's constitutional rights, merely that Grogan, Garcia or some other individual "requested" that they misuse their authority and block plaintiff's application. Instead, plaintiff is under the misguided belief that, based on the alleged fact that Grogan, Garcia, and Gill Hearn all supported Snyder's candidacy for District Attorney, one could reasonably infer that they agreed to retaliate against plaintiff because of his support of Morganthau. In other words, plaintiff's conspiracy claim relies almost exclusively on the premise that any individual who supports a particular candidate for office will undoubtedly take whatever steps necessary to seek revenge against an individual who supported that candidate's

opponent. While such a premise is manifestly ridiculous, only by accepting its veracity can one possibly overlook the obvious dearth of factual allegations in plaintiff's complaint and conclude that he has satisfied the heightened pleading standard applicable to § 1983 conspiracy claims.

Additionally, to the extent that he attempts to do so, the facts alleged in plaintiff's complaint fail to establish a causal connection through temporal proximity. Where a plaintiff attempts to establish a causal connection through temporal proximity alone, the temporal relationship between the protected activity and adverse action must be "very close." See Clark County Sch. Dist. v. Breeden, 532 U.S. 268, 273 (2001) (citing, with approval, cases that found intervening periods of three and four months insufficient to infer a causal connection through temporal proximity). District courts in this circuit consistently have found that an intervening period of more than two to three months is insufficient to establish a causal connection through temporal proximity alone. See, e.g., Amorosano-Lepore v. Generoso, 2008 U.S. Dist. LEXIS 55641, at *24 (S.D.N.Y. July 18, 2008) (concluding that a time lapse of 10 months was "not the close temporal proximity necessary to establish causation"); Woods v. Enlarged City Sch. Dist., 473 F. Supp. 2d 498, 528-29 (S.D.N.Y. 2007) (collecting caselaw and concluding that a lapse of five months was insufficient to establish a causal connection through temporal proximity alone); Cunningham v. Consol. Edison, Inc., 2006 U.S. Dist. LEXIS 22482, at *54-*59 (E.D.N.Y. March 28, 2006) (noting that "a passage of two months between the protected activity and the adverse employment action seems to be the dividing line" and finding that intervening periods of three, four, seven, and fourteen months were too long to infer a causal connection).

Here, plaintiff's public endorsement of Morgenthau occurred in May 2005, but plaintiff was not informed that he would not be appointed to the City Marshal position until March 2006, approximately ten months later. See Complaint ¶¶ 20, 44. Such a ten-month

period is simply too long to allow a reasonable person to infer a causal connection based on temporal proximity alone.  See, e.g., Amorosano-Lepore, 2008 U.S. Dist. LEXIS 55641, at *24.

Moreover, it is not just the absence of sufficient facts that warrants dismissal of plaintiff's retaliation claim, but rather, the existence of facts that directly contradict his conclusory allegation regarding the existence of a causal relationship between his endorsement of Morgenthau and the denial of his application.  According to plaintiff, he publicly endorsed Morgenthau on or about May 25, 2005, and the article discussing his endorsement was published at some point in June 2005.  See Complaint ¶¶ 20, 26.  Three months later, in September 2005, defendant Schwam invited plaintiff to begin the training course for the City Marshal position, which plaintiff completed over a period of several weeks in September and October 2005.  See id. ¶¶ 32-34.  This training consisted of "about 30 hours of classroom lectures, extensive homework, a final examination, field trips to courthouses, and working with existing City Marshals in the course of their duties."  See id. ¶ 34.  Thus, according to plaintiff's own allegations, despite the fact that plaintiff's endorsement of Morgenthau had been public knowledge for three months, the DOI defendants invested the time, energy and resources necessary to train him to perform the duties of a City Marshal.  In other words, plaintiff would have this Court conclude that the DOI defendants took all the necessary steps to train plaintiff to become a City Marshal, but had no intention of ever recommending his appointment to the City Marshal position.  Such a conclusion is patently absurd and one that no reasonable individual ever would reach.  This is precisely the type of "clearly baseless" claim that should be immediately disposed of before it has the opportunity to burden the Court and consume limited judicial resources.  See, e.g., Sleigh v. Charlex, Inc., No. 03 CV 1369, 2004 U.S. Dist. LEXIS 19118, at *20-*21 (S.D.N.Y. Sept. 14, 2004).

Plaintiff has now had two opportunities to state an actionable claim against the defendants, and has come up woefully short on each attempt. Plaintiff's evident inability to offer any facts regarding when, where or how the defendants entered into this alleged agreement to violate his constitutional rights is further evidence of the entirely speculative and fanciful nature of his sole cause of action. In this case, not only does plaintiff's complaint fail to allege any facts tending to show a causal relationship between his alleged protected speech and the challenged action, but the facts as alleged conclusively demonstrate that his endorsement of Morgenthau was a non-factor in the decision not to recommend him for an appointment to the position of City Marshal. Thus, because it is clear that plaintiff can prove no set of facts that would entitle him to relief, his First Amendment retaliation claim must be dismissed.

**B.    Intracorporate Conspiracy Doctrine**

Finally, to the extent that plaintiff's retaliation alleges that defendants conspired to violate his First Amendment rights, it must be dismissed under the intracorporate conspiracy doctrine. "The intracorporate conspiracy doctrine provides that the officers, agents and employees of a single corporate or municipal entity, each acting within the scope of his or her employment, legally are incapable of conspiring together." Cameron v. Church, 253 F. Supp. 2d 611, 623 (S.D.N.Y. 2003); McEvoy v. Spencer, 49 F. Supp. 2d 224, 226 (S.D.N.Y. 1999). Here, at the time of the acts in question, all of the individual defendants were members of either the FDNY or the DOI, and, therefore, employees of defendant City of New York. See New York City Charter § 481, et seq. & § 801, et seq. As employees of the same municipal entity, defendants legally were incapable of conspiring together. Thus, plaintiff's § 1983 claim must be dismissed.

18

## <u>CONCLUSION</u>

For the foregoing reasons, defendants respectfully request that this Court grant their motion to dismiss the complaint in its entirety and deny the relief requested therein, together with such other and further relief as this Court deems just and proper.

Dated:   New York, New York
      December 2, 2008

            **MICHAEL A. CARDOZO**
            Corporation Counsel of the
             City of New York
            Attorney for Defendants
            100 Church Street, Room 2-138
            New York, New York 10007-2601
            (212) 788-0866
            cseacord@law.nyc.gov

      By:     /s/
          Christopher A. Seacord (CS 0821)
          Assistant Corporation Counsel

Paul Marks,
Christopher A. Seacord,
  Of Counsel.