UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------X
WILLIAM KREGLER,                   :
                                   :    08 Civ. 6893 (VM)
                  Plaintiff,       :
                                   :
     - against -                   :    **DECISION AND ORDER**
                                   :
CITY OF NEW YORK et al.,           :
                                   :
                  Defendants.      :
----------------------------------X

**VICTOR MARRERO, United States District Judge.**

Plaintiff William Kregler ("Kregler") brought this action pursuant to 42 U.S.C. § 1983 ("§ 1983") alleging that defendants violated his rights under the First and Fourteenth Amendments of the United States Constitution. Defendants consist of the City of New York (the "City") and five individuals who at all relevant times were employees of the City's Fire Department ("FDNY") or Department of Investigation ("DOI") (collectively with the City, "Defendants"). Defendants moved pursuant to Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)") to dismiss Kregler's amended complaint for failure to state a claim upon which relief can be granted. By Decision and Order dated March 16, 2009,[1] the Court deferred ruling on the motion pending the outcome of a preliminary hearing it scheduled pursuant to Federal Rule of Civil Procedure 12(i) ("Rule 12(i)"). The Court conducted

---

[1] The Decision and Order is reported as Kregler v. City of New York, 608 F. Supp. 2d 465 (S.D.N.Y. 2009).

that proceeding on July 16, 2009 and heard the parties'
further oral arguments on July 28, 2009. For the reasons
stated below, the Court grants Defendants' motion.

## II.  **FACTS**

In its earlier Decision and Order, familiarity with which
is assumed, the Court fully stated the facts relevant to this
litigation as presented in the amended complaint, dated
November 7, 2008 ("Amended Complaint"). See Kregler, 608 F.
Supp. 2d at 468-69. However, insofar as necessary for a
proper understanding of this ruling, a factual summary
follows.

In March 2004, one month after retiring from his position
as Fire Marshal with the FDNY after being employed there for
20 years, Kregler filed a preliminary application for
appointment by the City's Mayor as a City Marshal. Candidates
for appointment as City Marshals are subject to a DOI
investigation of personal and financial background, and must
complete a training program administered by DOI. In January
2005, Kregler was interviewed by representatives of the
Mayor's Committee on City Marshals and was later notified by
defendant Keith Schwam ("Schwam"), an Assistant Commissioner
at DOI, that DOI would commence its personal and financial
review of Kregler's background. As a follow-up, Kregler met in
April 2005 with defendant Darren Keenaghan ("Keenaghan"), a

-2-

DOI investigator, to discuss Kregler's preliminary application. Kregler then made minor modifications on the application, signed the revised form, and provided authorizations for release of personal information.

On May 25, 2005 Kregler, in his capacity as President of the Fire Marshals Benevolent Association ("FMBA"), publicly endorsed the candidacy of Robert Morgenthau ("Morgenthau") for reelection as District Attorney for New York County. Kregler asserts that at that time all other law enforcement associations in the City, including two unions of firefighters, supported Morgenthau's opponent, Leslie Crocker Snyder ("Snyder"). An article that appeared in a June 2005 edition of The Chief, a local newspaper, reported on Kregler's endorsement of Morgenthau. According to Kregler, defendant Brian Grogan ("Grogan"), an FDNY Supervising Fire Marshal, posted a copy of that article in a public area within one of the FDNY offices. Kregler further alleges that Grogan "berated" him for the endorsement, stating: "who the f--- do you think you are. Louie [Garcia] makes the endorsement." (Amended Complaint ("Compl.") ¶ 28.) Defendant Louis Garcia ("Garcia") was then Chief Fire Marshal of the FDNY's Bureau of Fire Investigation. Kregler alleges that both Garcia and Grogan politically supported Snyder's campaign against Morgenthau, that Garcia was "personally and socially

-3-

acquainted" with defendant Rose Gill Hearn ("Gill Hearn")
(Compl. ¶ 39), the DOI Commissioner, and that Gill Hearn also
politically supported Snyder's candidacy.

On July 7, 2005, Kregler was interviewed by staff of the
Mayor's Office in connection with his Fire Marshal application
and the following day was told by Schwam that the next step in
the process would be the completion of the DOI background
check.  To that end he met a second time with Keenaghan to
update and refile his application.  In September 2005, Kregler
and four other candidates began the DOI training classes,
which Kregler states he successfully completed in October
2005.   In November 2005, Kregler satisfied the last
requirement for appointment by demonstrating his ability to
obtain a bond.

In March 2006, Kregler was informed by letter from Schwam
that he would not be appointed as a Fire Marshal.  Kregler
filed this action in August 2008, raising a claim of First
Amendment retaliation in violation of § 1983.  In the Amended
Complaint, Kregler alleges that Garcia and Gill Hearn "agreed
to cause Kregler's application for appointment as a City
Marshal to be rejected by DOI in retaliation for Kregler's
support of Morgenthau."  (Compl. ¶ 41.)  He further asserts
that Garcia, Grogan and other FDNY employees requested that
Gill Hearn, Schwam, Keenaghan, and other DOI employees misuse

-4-

their authority to cause the rejection of his application. Responding to the reason Defendants proffered to him for denying his application – Kregler's failure to disclose details of a Command Discipline he had received in 1999 during his employment by the FDNY – Kregler contends that this explanation was merely a pretext for Defendants' unlawful retaliation.

### III.  <u>STANDARD OF REVIEW AND PRIOR PROCEEDINGS</u>

In scheduling the Rule 12(i) hearing in this matter as a step to further inform the Court's evaluation of Defendants' motion to dismiss the Amended Complaint, the Court applied the standard of review for such motions articulated by the Supreme Court in <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544 (2007). There, the Supreme Court stated that to be sufficient under Federal Rule of Civil Procedure 8(a) ("Rule 8(a)") and survive a Rule 12(b)(6) motion to dismiss, the factual allegations in a complaint must be "enough to raise a right to relief above the speculative level," <u>id.</u> at 555, and state a claim "plausible on its face," <u>id.</u> at 570.

As interpreted and applied by the Second Circuit in <u>Iqbal v. Hasty</u>, 490 F.3d 143 (2d Cir. 2007), <u>Twombly</u> enunciated "a flexible 'plausibility standard,' which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the

claim <u>plausible</u>." 490 F.3d at 157-58 (emphasis in original). The Second Circuit in <u>Iqbal</u> concluded that to survive a motion to dismiss under <u>Twombly's</u> plausibility standard, "a conclusory allegation concerning some elements of a plaintiff's claims might need to be fleshed out." <u>Id.</u> at 158. To that end, the Circuit Court counseled that a district court consider "exercising its discretion to permit some limited and tightly controlled reciprocal discovery so that a defendant may probe for amplification of a plaintiff's claims and a plaintiff may probe such matters as a defendant's knowledge of relevant facts and personal involvement in challenged conduct." <u>Id.</u>

In prior proceedings in this action, the Court, in response to Defendants' pre-answer motion to dismiss Kregler's original complaint, and in an effort to resolve serious charges of official misconduct as expeditiously as possible with a minimum of motion practice, permitted Kregler to file an Amended Complaint. The revised pleadings Kregler submitted prompted Defendants' renewed motion to dismiss.

Upon review of the Amended Complaint the Court found that under <u>Twombly</u>'s plausibility standard Kregler's pleadings remained borderline at best in stating a First Amendment retaliation claim. <u>See</u> <u>Kregler</u>, 608 F. Supp. 2d at 474. The Court stated that to survive Defendants' new motion to

-6-

dismiss, the pleadings as modified would require the Court to accept as true numerous conclusory allegations, to make substantial inferential leaps, and to resolve considerable doubts in Kregler's favor. Specifically, the Court noted that Kregler did not allege that Gill Hearn had any direct knowledge of Kregler's endorsement of Morgenthau. Thus, the plausibility of Kregler's retaliation claim would turn on a finding that because Garcia and Gill Hearn were "personally and socially acquainted" (Compl. ¶ 39), and because allegedly they both supported Snyder, then by inference, Garcia used his contacts with Gill Hearn improperly to influence her determination on Kregler's application, and Gill Hearn and Garcia then agreed to cause Kregler's appointment to be rejected by DOI in retaliation for Kregler's support of Morgenthau.

This Court envisioned the Rule 12(i) hearing as an opportunity to provide, as the Second Circuit suggested in Iqbal, 490 F.3d at 158, the "amplication" or "flesh[ing out]" of Kregler's claims in respect of two threshold issues which his Amended Complaint addressed in generalized or conclusory terms: the various Defendants' direct involvement in the alleged retaliatory conduct, and the causal connection between Kregler's protected speech and Defendants' alleged adverse employment action of denying Kregler's application for

appointment as a City Marshal.

Recently, and prior to this Court's scheduled Rule 12(i) hearing, the Supreme Court further elaborated on Twombly's plausibility standard.  In Ashcroft v. Iqbal, reversing one aspect of the Second Circuit's application of Twombly, the Supreme Court explained that a claim has facial plausibility "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  129 S. Ct. 1937, 1949 (2009).  Further, the Supreme Court noted that the standard "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  Id.  (quoting Twombly, 550 U.S. at 556).  Rather, the Supreme Court continued, where a complaint pleads facts "that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'"  Id. (quoting Twombly, 550 U.S. at 557).

The Supreme Court then reiterated two longstanding basic principles governing a court's evaluation of a motion to dismiss.  First, the rule that a court must accept as true all well-pleaded allegations in a complaint does not apply to legal conclusions or to "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory

-8-

statements." Id.  And second, "only a complaint that states a plausible claim for relief survives a motion to dismiss." Id. at 1950.  This determination, the Supreme Court counseled, is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  Id. Concluding this analysis and instructions, the Supreme Court stated that "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not 'show[n]' - 'that the pleader is entitled to relief.'"  Id. (quoting Fed. R. Civ. P. 8(a)(2)).

The Court recites the Supreme Court's discussion of the standard of review governing a motion to dismiss in Iqbal at such length because the decision provides an additional explanation of the controlling standard to guide this Court's review of Kregler's Amended Complaint with and without the benefit of the record produced at the Rule 12(i) hearing.  The Court finds that under either factual basis, in the light of Iqbal's elaboration of the Twombly plausibility standard, Kregler's pleadings are insufficient to state a retaliation claim under the First Amendment.

## IV.  DISCUSSION

### A.  FACIAL REVIEW OF THE COMPLAINT UNDER IQBAL

A facial examination of the Amended Complaint reveals

numerous allegations Kregler makes which amount to "[t]hreadbare recitals" of the elements of a cause of action "supported by mere conclusory statements," to which the Court need not accord a presumption of truth. Id. at 1949. These deficient pleadings include Kregler's speculation that because Garcia and Gill Hearn were "personally and socially acquainted" (Comp. ¶ 39), they "agreed to take steps to interfere with and prevent Kregler's appointment," and that they "agreed to cause Kregler's appointment as a City Marshal to be rejected by DOI, in retaliation for Kregler's support of Morgenthau" (id. ¶¶ 40, 41); and that Garcia and Grogan requested Gill Hearn, Schwam, Keenaghan and/or other DOI officials to misuse their legal authority to cause rejection of Kregler's application in retaliation for his endorsement of Morgenthau (id. ¶¶ 45, 46).

In essence, Kregler asks the Court to draw an inference that Gill Hearn, merely by reason of some alleged personal and social acquaintance with Garcia, knew of Krelger's support for Morgenthau and improperly joined Garcia in a conspiracy to deprive Kregler of a public appointment in retaliation for his political activity. Similarly, the Amended Complaint contains no factual allegations about any direct, personal knowledge of Kregler's endorsement of Morgenthau on the part of Schwam or Keenaghan, or of any personal involvement by these defendants

and Grogan in the decision to reject Kregler's application.

Under the Supreme Court's formulation of <u>Twombly</u>'s plausibility standard in <u>Iqbal</u>, such conclusory pleadings are not entitled to facial acceptance as true, and the Court may reject them without permitting Kregler even limited discovery. <u>See Iqbal</u>, 129 S. Ct. at 1953 (rejecting the Second Circuit's proposed "careful-case-management approach" and reaffirming that "the question presented on a motion to dismiss a complaint for insufficient pleadings does not turn on the controls placed upon the discovery process"). Absent sufficient factual allegations that Gill Hearn, who is the only decision-maker named in the Amended Complaint, had knowledge of Kregler's support of Morgenthau and agreed to cause his application to be denied for that reason, Kregler has not pled facts "enough to raise a right to relief above the speculative level." <u>Twombly</u>, 550 U.S. at 555. Accordingly, Kregler cannot state a claim of unlawful retaliation in violation of the First Amendment against any of the Defendants.

Even if Kregler's conclusory allegations were credited to some degree, the Court finds that the Amended Complaint pleads nothing more than "facts that are 'merely consistent with' a defendant's liability," but "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

Iqbal, 129 S. Ct. at 1949 (quoting Twombly, 550 U.S. at 557).
Drawing upon the Court's "judicial experience and common
sense" in the "context-specific" circumstances of this case,
the Court is not persuaded that the factual content of
Kregler's pleadings permits a reasonable inference that
unlawful retaliation was the likely explanation for the
Defendants' alleged misconduct.  Id. at 1950.

    Kregler's endorsement of Morgenthau occurred in June of
2005.  Yet, Defendants allowed his application to proceed
through all of stages of the appointment process until
completed in November of 2005.  These steps included numerous
interviews with officials of DOI, the Mayor's Office, and the
Mayor's Committee on City Marshals; amendments of Kregler's
application forms; financial and background investigations;
and approximately 30 hours of extensive training, classroom
lectures and homework, field trips, and working with existing
City Marshals.   In addition, Kregler was allowed to
demonstrate his ability to obtain the required bond.
According to the allegations in the Amended Complaint,
Defendants' decision to reject Kregler's application was made
sometime between November 2005 and the date Kregler was
informed of the decision, on March 10, 2006.  It would not
comport with experience and common sense for Defendants to
expend so much public time, energy and resources fully

processing the papers of an applicant whose appointment they allegedly had already agreed to reject for unlawful reasons.

The plausibility of Kregler's hypothesis that only unlawful retaliation explains Defendants' decision concerning his application diminishes even more in the light of an additional consideration: the "context-specific" factual issue pertaining to the Command Discipline Kregler was issued in 1999 while employed by the FDNY. Kregler acknowledges in the Amended Complaint that the City informed him that the rejection of his application related to his alleged failure to disclose to DOI all relevant details regarding that disciplinary action. As the Supreme Court suggested in Twombly and Iqbal, when presented with factual circumstances "not only compatible with, but indeed ... more likely explained by, lawful ... behavior," a finding of retaliatory misconduct here does not constitute a reasonable inference, and thus does not plausibly support the conclusion Kregler advances. Id. at 1950 (quoting Twombly, 550 U.S. at 557).

B.    THE RULE 12(i) HEARING

The Court finds that even if it considered any further amplification of Kregler's Amended Complaint by means of the record of the hearing the Court conducted pursuant to Rule 12(i), Kregler's pleadings so fleshed out still fail to show that his factual allegations push his claim of entitlement to

relief over the line between possibility and plausibility. See Twombly 550 U.S. at 557. Rather, not only does the record of that proceeding not permit the Court to find more than a mere possibility of misconduct, it strengthens a more reasonable inference that Defendants' rejection of Kregler's application is "more likely explained by ... lawful ... behavior." Iqbal, 129 S. Ct. at 1950 (citing Twombly, 550 U.S. at 567.)

As this Court noted in its initial ruling on Defendants' motion to dismiss, the Court envisioned the Rule 12(i) hearing as a means of responding to a longstanding concern courts are frequently called upon to address. As backdrop for the Court's analysis and its disposition of the results of the Rule 12(i) hearing it conducted, the Court's earlier observations bear full repetition. See Kregler, 608 F. Supp. 2d at 466-68.

Not uncommonly, on the basis of nothing more than the barest conclusory allegations, government officials are summoned to court to defend private lawsuits charging constitutional violations and other serious official misconduct. In most cases the costs the parties incur in litigating such actions, measured by expenditures of time and public resources, disruption of government operations, and

-14-

potential damage to professional and personal reputations, are quite extensive.

Frequent instances arise in which the underlying issues raise matters involve the formulation of government policy or, as in the case at hand, the appointment of public officers. These circumstances may implicate inquiry into confidential communications, thought processes and internal documents containing sensitive matters the public disclosure of which in itself could entail judicial proceedings. Equally significant are the attendant impacts of such lawsuits on the courts' dockets and the administration of justice. See Iqbal, 129 S. Ct. at 1953 ("If a Government Official is to devote time to his or her duties ... it is counterproductive to require the substantial diversion that is attendant to participating in litigation and making informed decisions as to how it should proceed. Litigation ... exacts heavy costs in terms of efficiency and expenditure of valuable time and resources that might otherwise be directed to the proper execution of the work of the Government."); Harlow v. Fitzgerald, 457 U.S. 800, 814 (1982) ("[I]t cannot be disputed seriously that claims frequently run against the innocent as well as the guilty – at a cost not only to the defendant officials, but to society as a whole. These social costs include the expenses of litigation, the diversion of official energy from pressing

public issues, and the deterrence of able citizens from acceptance of public office.").

More fundamentally, the question regarding the personal and social costs associated with litigating insubstantial lawsuits reduces to a far greater value: fairness.  It is inequitable to subject a government official – or indeed any party – to the burdens of defending a claim challenged on legitimate grounds as insubstantial or frivolous for any longer than the minimum time reasonably necessary to ascertain whether sufficient basis exists to warrant allowing the action to proceed.   However, the same open door that welcomes the just cause also admits the nuisance suit; the flimsy or frivolous allegation is as free to enter the courthouse as the valid claim.  As the Supreme Court has recognized, accusations of unconstitutional conduct on the part of public officials are easy to level, but very difficult and costly to defend against.  See Crawford-El v. Britton, 523 U.S. 574, 584-85 (1998) (noting a "potentially serious problem" that the District of Columbia Circuit had sought to address: "Because an official's state of mind is 'easy to allege and hard to disprove,' insubstantial claims that turn on improper intent may be less amenable to summary disposition than other types of claims against government officials.") (citation omitted); Tenney v. Bandhove, 341 U.S. 367, 378 (1951) ("In times of

political passions, dishonest or vindictive motives are readily attributed to [government official] conduct and as readily believed.").

Over the course of many years courts concerned with the severe hardships that insubstantial lawsuits place on litigants, on the justice system and on society as a whole have struggled with this dilemma, not only as it pertains to complaints lodged against government officials, but to litigation in general. To address these issues, courts have devised several tests meant both to instruct plaintiffs on drafting well-pleaded claims, and to guide the courts' review of the legal sufficiency of claims for relief.

Fundamentally, the "plausibility" standard that the Supreme Court articulated in <u>Twombly</u> and <u>Iqbal</u> reflect one judicial means to part the wheat from the chaff in assessing the sufficiency of pleadings. Yet, as the case at hand illustrates and the law reports amply record, the problem persists, a sign of an intrinsic tension built into the federal rules. Whether in their factual allegations as originally crafted, or upon being granted leave to replead deficient claims, seasoned plaintiffs' counsel know to charge the pleadings with enough adjectives that reverberate of extreme malice, improper motives, and bad faith to raise factual issues sufficient to survive a dispositive motion,

thus securing a hold on the defendant strong enough for the duration, however long and costly the ultimate resolution of the claim may be.

In practical terms, the philosophy of pleading that these rules embody, a one-rule-fits-all principle, defines the scope of the problem engendered by its unintended outcomes.  For instance, in theory the same generalized minimal Rule 8(a) standards that govern the plaintiff's drafting, as well as the court's review, of a complaint alleging common law negligence stemming from a slip and fall, or a breach of a simple contract for failure to pay a debt, apply to writing and evaluating a complaint charging civil violations of intricate federal antitrust, intellectual property, or racketeering statutes.  Similarly, the bare bones essence of a claim that is necessary to survive a motion to dismiss is the same whether the complaint is authored by John Dioguardi or by Wall Street lawyers.  See Dioguardi v. Durning, 139 F.2d 774 (2d Cir. 1944).

In consequence, the Court's Rule 12(i) hearing represented an effort to employ an infrequently used procedure to bring about speedier and better-informed resolution of a motion to dismiss involving serious accusations of violations of constitutional rights leveled against high-ranking government officials.  This endeavor accords with guidance by

the Supreme Court and the Second Circuit instructing district courts to exercise their broad discretion to guard public officials from being "subjected to unnecessary and burdensome discovery or trial proceedings." Crawford-El, 523 U.S. at 597-98; Iqbal, 490 F.3d at 159; Harlow, 457 U.S. at 817-18 (stating that "bare allegations of malice should not suffice to subject government officials either to the costs of trial or to the burdens of broad-reaching discovery"). Although these cases were decided in connection with defenses asserting qualified immunity, as the Supreme Court made clear in Twombly the underlying concerns over insubstantial or frivolous lawsuits could apply with no less force in the context of certain other litigation as well. In fact, the effects of such actions may be compounded in cases charging abuse of power, dereliction of duty for political purposes, and other serious accusations of unconstitutional conduct by government officials where qualified immunity may not apply, or the defendant chooses not to invoke it.

As scheduled, the hearing was limited to two threshold issues raised in Defendants' objections to the pleadings in the Amended Complaint: the absence of sufficient allegations of personal involvement by various individual defendants in making the decision to reject Kregler's application, and lack of a causal connection between Kregler's endorsement of

-19-

Morgenthau and the rejection of his application for appointment as a City Marshal. These questions constitute fundamental aspects of a sufficient claim of First Amendment retaliation, and are thus decisive in any review of whether the pleadings, as amplified by the pertinent record of the preliminary hearing, satisfy the Twombly/Iqbal plausibility standard.

To summarize its purpose and scope, Rule 12(i) authorizes the Court to conduct a preliminary hearing to consider and decide before trial a motion raising any defense listed in Rule 12(b)(1)-(7). See Fed. R. Civ. P. 12(i). As appropriate, the Court may use that procedure to determine jurisdictional as well as other threshold issues. See Rivera-Gomez v. de Castro, 900 F.2d 1, 2 (1st Cir. 1990) (noting that Rule 12(i) "can be an excellent device for conserving time, expense, and scarce judicial resources by targeting early resolution of threshold issues"); Cruz v. Sullivan, 802 F. Supp. 1015, 1016-17 (S.D.N.Y. 1992). The Court may order such a hearing on motion or sua sponte. See Rivera-Gomez, 900 F.2d at 2. As regards matters involving factual issues that bear on the subject of the hearing the Court may consider affidavits, depositions or documents, or testimony presented orally. See Unicon Mgmt. Corp. v. Koppers Co., 38 F.R.D. 474, 476-77 (S.D.N.Y. 1965), aff'd, 366 F.2d 199 (2d Cir. 1966).

However, this procedure cannot be employed to decide the merits of a dispute, or issues so closely interwoven with the merits so as to render it unlikely or impractical that the hearing would achieve a productive outcome. See United States v. Montreal Trust Co., 358 F.2d 239 (2d Cir. 1966), cert. denied, 384 U.S. 919 (1966); Louisiana Power & Light Co. v. United Gas Pipe Line Co., 456 F.2d 326 (5th Cir.), rev'd on other grounds, 406 U.S. 621 (1972); see generally 5C Charles A. Wright and Arthur R. Miller, Federal Practice and Procedure § 1373 at 278-90 (3d ed. 2004).

Here, on repleading to address deficiencies in the original complaint, Kregler described the threshold issues either in conclusory terms or with generalized allegations which still require substantial inferential leaps to make his claims plausible, rather than with well-pleaded facts that, accepted as true, plausibly suggest Defendants' retaliatory misconduct as the likely explanation for their rejection of Kregler's application. The Rule 12(i) hearing, even limiting the Court's consideration solely to Kregler's testimony on direct and cross-examination, confirms the Court's finding in this regard.[2]

---

[2] During the hearing, at the conclusion of Kregler's testimony, Defendants argued that their motion should be granted even without consideration of their testimony. To preserve the widest range of options and fullest flexibility in its resolution of this matter, the Court decided to hear the testimony of Schwam, Grogan, Garcia and Gill Hearn, who testified in support of Defendants' motion to dismiss. Upon consideration, the Court

C.    <u>KREGLER'S TESTIMONY</u>

Kregler testified about the basis for his allegations that the individual defendants had personal involvement in the decision to reject his application, as well as the basis for his allegation that Garcia and Gill Hearn agreed to cause his application to be rejected.  Kregler's testimony demonstrates that he essentially had no factual basis for alleging that Keenaghan, Grogan, and Schwam were involved in the decision to reject his application in retaliation for his endorsement of Morgenthau.  Kregler's testimony also shows that he lacked a plausible factual basis for alleging that he was denied the City Marshal appointment because Gill Hearn and Garcia conspired to have his application rejected.  Kregler's testimony therefore failed to convince the Court that Kregler has sufficiently alleged either personal involvement by the individual defendants in making the decision to reject Kregler's application, or a causal connection between Kregler's endorsement of Morgenthau and the rejection of his application for appointment as a City Marshal.

1.    <u>Personal Involvement of Keenaghan, Grogan, and Schwam</u>

---

finds that Defendants are entitled to dismissal of the Amended Complaint on the basis of the pleadings, with or without weighing Kregler's testimony. Consequently, the Court need not address Defendants' testimony at the Rule 12(i) hearing because it played no role in the Court's decision.

Regarding his claim against Keenaghan, Kregler testified that he never discussed his endorsement of Morgenthau with Keenaghan during their two conversations, and that he had no factual basis for believing that Keenaghan had been in contact with Grogan or Garcia, or that Keenaghan had been a decision-maker with respect to the City Marshal application process. (Tr. at 76-78.)

With respect to Grogan, Kregler testified that he had no factual basis to support a claim that Grogan had conversations with DOI personnel regarding Kregler's City Marshal application or regarding Kregler's endorsement of Morgenthau. (Id. at 84.)  Kregler also testified that he had no factual basis to support a claim that Grogan was a decision-maker. (Id. at 85.)

Regarding his claim against Schwam, Kregler testified that he had no factual basis to support a claim that Schwam had spoken with Grogan about the City Marshal application; that Schwam had ever spoken to Garcia or Gill Hearn about Kregler's endorsement of Morgenthau; or that Schwam discussed the possibility of stopping Kregler's application with Grogan or Garcia.  (Id. at  82-83.)

Based on this testimony, the Court finds that Kregler has not sufficiently alleged that Keenaghan, Grogan, and Schwam were personally involved in the decision to reject Kregler's

City Marshal application, and that the statements in his pleadings that these individuals played material roles in that determination amount to conclusory allegations grounded on bare speculation. The Amended Complaint's factual allegations regarding these defendants are that Keenaghan met with Kregler twice to interview him as part of the DOI investigation; that Grogan posted an article about Kregler's endorsement of Morgenthau and berated Kregler for the endorsement; and that Schwam communicated with Kregler regarding his application and conducted the training course. These allegations, as supplemented by Kregler's testimony, do not "allow[] the [C]ourt to draw the reasonable inference that the defendant[s] [are] liable for the misconduct alleged." Iqbal, 129 S. Ct. at 1949. The Court does not find Kregler's claim that Keenaghan, Schwam, and Grogan were involved in denying Kregler's application in retaliation for his endorsement of Morgenthau to raise a plausible claim for relief. See id.

   2.   Agreement Between Garcia and Gill Hearn

   Kregler testified that he was told by the vice president of the Fire Marshal's Benevolent Association that Garcia was a frequent patron of a Manhattan restaurant called Elaine's, as was Snyder. Kregler also stated that he was told that Garcia, Snyder, and Gill Hearn knew each other very well. (Tr. at 38.) Beyond these bare statements he offered no other

-24-

factual basis to support his claim that Gill Hearn also backed Snyder's candidacy and that she and Garcia agreed to cause the rejection of Kregler's application because of his endorsement of Morgenthau.  In fact, Kregler testified that he did not believe that Gill Hearn was upset or angry about his endorsement of Morgenthau.  (Id. at 72.)  However, Kregler testified that he nonetheless believes that a collusive, retaliatory effort existed to deny him appointment as City Marshal after he had completed all of the requirements presented to him.  (Id. at 74.)

Kregler also testified regarding the basis for his assertion in paragraph 40 of the Amended Complaint, which alleges that "after the defeat of Snyder in November of 2005, Garcia and Gill Hearn learned that Kregler was on the verge of being appointed as a City Marshal and agreed to take steps to interfere with and prevent Kregler's appointment."  (Id. at 40.)  Kregler indicated that the sole basis for this allegation was the denial of his application "after doing a complete two-year process, going through several interviews, several background investigations."  (Id. at 86.)  Kregler cited his completion of the City Marshal course; his fulfillment of the bond requirement; and the forwarding of all necessary applications.  Kregler believed that there was nothing left in the process other than the actual appointment.

(<u>Id.</u> at 87.)  As Kregler stated, "There was nothing left to do but to be appointed.  There was nothing left." (<u>Id.</u> at 89.) Kregler stressed his belief that because he had completed the entire application process, the decision not to offer him the appointment must have been made "up high, it had to be done up high." (<u>Id.</u> at 92.)  Specifically, Kregler testified that, "based on [Garcia and Gill Hearn's] relationship, I felt that was the reason why I was denied appointment [as] City Marshal, that they knew each other, that they were both high-ranking officials and that there was some sort of communication because nothing else showed up to deny me this appointment." (<u>Id.</u> at 94.)

When asked about the basis for his allegation that Garcia learned that Kregler "was on the verge of being appointed as a City Marshal," Kregler testified that he believed Garcia knew about his impending appointment to the City Marshal position because of his friendship with Gill Hearn. (<u>Id.</u> at 89, 91-92).  Kregler stated, however, that he had no factual basis to support his belief that Garcia and Gill Hearn had a close personal and social relationship on the basis of which they had communicated regarding his application. (<u>Id.</u> at 94.)

Kregler also testified that he had been told of a November 2005 conversation between James Kelty, a friend and associate of Garcia's, and Barry Goffred, a friend of

Kregler's who was a retired fire marshal. Kregler's understanding was that Kelty conveyed to Goffred that Kelty had heard that Kregler "ain't becoming no Sheriff." (Id. at 43.) Kregler later interpreted this statement to support his belief that Garcia and Gill Hearn had agreed to have Kregler's City Marshal application rejected.

The Court finds that the factual allegations presented in the Amended Complaint as amplified by Kregler's testimony hearing do not allow the Court to conclude that Kregler has sufficiently alleged factual basis to support a reasonable inference that Garcia and Gill Hearn agreed to reject Kregler's application. See Iqbal, 129 S. Ct. at 1949. Kregler's belief that Garcia and Gill Hearn were socially acquainted and his supposition that his appointment must have been derailed at a high level if it was rejected after he completed the application process simply do not constitute factual allegations that cross the "line between possibility and plausibility of 'entitlement to relief.'" Id. (quoting Twombly, 550 U.S. at 557). Kregler's testimony provided a more complete picture of the allegations in the Amended Complaint, but in the Court's view, the amplification either fails to support Kregler's factual allegations or predominantly works against his claims. Kregler's inability to offer anything but speculation, especially in the face of

-27-

a factual explanation "not only compatible with, but indeed
... more likely explained by, lawful ... behavior" – the lack
of disclosure regarding the Command Discipline incident –
convinces the Court that Kregler has not raised "a plausible
claim for relief." Id. at 1949-50.

D.    EVALUATION OF THE RULE 12(i) HEARING

        Although the Court has determined that the Amended
Complaint fails by itself under the standard enunciated by
Iqbal and Twombly, the Court is satisfied that the Rule 12(i)
hearing proved useful in this case.  It served the purpose the
Court envisioned: a means to expedite resolution of serious
accusations of official wrongdoing leveled against high-
ranking government employees.

        The procedure helped amplify Kregler's sketchy factual
pleadings with live testimony.  Subjecting Kregler's
allegations to more direct elaboration, cross-examination and
questions by the Court, brought out details and explanations
far more informative than what would have been produced by
additional written submissions in motion practice.   The
hearing thus created a fuller and clearer record which the
Court could employ in reviewing Defendants' motion to dismiss.
The greater exposition of the facts alleged enhanced the
Court's understanding, and possibly also that of the parties,
of the claims in dispute, thereby facilitating resolution of

what had appeared to be a closer call on the paper record comprising the original motion.

The procedure demonstrated its value even when consideration of the record for decision is limited, as the Court ultimately chose to do, to Kregler's own testimony and exhibits. Although the Court heard the testimony and viewed the material proffered by Defendants, and in the end found it unnecessary to consider that portion of the hearing in deciding the motion, creating the amplified record was nonetheless useful. First, in preparation for the hearing, the Court permitted limited discovery through exchange of documents relevant to the two threshold issues. This discovery produced additional factual material that helped to place Kregler's allegations in context and to further crystalize the dispute. Together with Defendants' testimony, the material also created another option for the Court to weigh in the event Kregler's direct case had left open any factual gaps in the explanation of his claims that might have been filled by Defendants' presentation. Second, had the Court denied Defendants' motion, Defendants' testimony at the hearing is the equivalent of Court-supervised testimony at depositions, which might still have served a valuable purpose at later stages of the litigation, especially as evidence

useful in the preparation and defense of any motion for summary judgment.

In terms of time, it took approximately five months from the Court's preliminary decision to order the Rule 12(i) hearing to the disposition of the case by the instant ruling. Thus, the Court was able to resolve this matter in a far shorter time than would have been required if it had denied Defendants' original motion to dismiss by reason of the closeness of the call at the initial review and thereby permitting the litigation to proceed into lengthier discovery and probably more time-consuming summary judgment motions – a process which, given the type of case involved, in this District would ordinarily consume as much as two years of litigation to conclude with the Court's determination.

E.    <u>NO LEAVE TO AMEND</u>

Based on discovery that was produced before the Rule 12(i) hearing and testimony by Defendants at the hearing, Kregler suggested at the closing arguments following the hearing that he might seek leave to amend his complaint to name DOI Inspector General Jayme Naberezny ("Naberezny") as a defendant, in place of Gill Hearn.  Kregler implied that perhaps it was Naberezny who had agreed with Garcia to stop Kregler's appointment because Naberezny had contacted Garcia

to obtain Kregler's FDNY personnel files for her work on Kregler's background investigation.

A court "should freely give leave" to replead "when justice so requires." Fed. R. Civ. P. 15(a)(2). However, "it is within the sound discretion of the district court to grant or deny leave to amend. A district court has discretion to deny leave for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party." McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 200 (2d Cir. 2007) (internal citations omitted).

The Court finds that allowing the proposed repleading would be futile because the claim against Naberezny would be based on pure speculation. Kregler has no factual basis for alleging that Naberezny agreed with Garcia to obstruct Kregler's City Marshal application. As with the current Amended Complaint's claim against Gill Hearn, a claim against Naberezny would rely upon an allegation that she and Garcia discussed Kregler's endorsement of Morgenthau, that she shared Garcia's alleged unlawful retaliatory motives, and that she improperly caused Gill Hearn to reject Kregler's application on this impermissible ground. The Court declines to allow Kregler to proceed with this type of theory on the basis of such bare speculation. The Court also notes that it has

-31-

already permitted Kregler to amend his complaint once before.
Accordingly, any request for leave to replead would be denied.

## V. ORDER

For the reasons discussed above, it is hereby

**ORDERED** that the motion to dismiss the amended complaint
(Docket No. 10) of defendants The City of New York, Louis
Garcia, Brian Grogan, Rose Gill Hearn, Keith Schwam, and
Darren Keenaghan is GRANTED, and the amended complaint is
dismissed with prejudice.

The Clerk of the Court is directed to withdraw any
pending motions and to close this case.


**SO ORDERED**.

Dated:      New York, New York
            14 August 2009


VICTOR MARRERO
U.S.D.J.

-32-